# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WYNNEISE MORELAND, :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant. :

Case No. 3:09-cv-101

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 15, 2004, alleging disability from September 25, 2003, due to bulging discs with nerve damage, high cholesterol, and arthritis. (Tr. 78; 107). Plaintiff's application was denied initially and on reconsideration. (Tr. 56; 62). Administrative Law Judge Thaddeus Armstead held a hearing and a supplemental hearing, (Tr. 691-717; 718-73), following which he determined that Plaintiff is not disabled. (Tr. 14-30). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe degenerative changes of the spine and obesity, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 20, ¶ 3; Tr. 23, ¶ 4). Judge Armstead found further that Plaintiff has the residual functional capacity to perform a limited range

3

of light work. *Id.*, ¶ 5. Judge Armstead then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 28, ¶ 10). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 39).

The record contains a copy of treating physician Dr. Vosler's office notes dated September 13, 2003, through January 18, 2009. (Tr. 297-330; 351-54; 359-68 442-45; 448-51). Those records reveal that Dr. Vosler treated Plaintiff for various medical conditions including hypertension, depression, hyperlipidemia, type II diabetes, metabolic syndrome, back pain, radiculopathy, fatty liver, anxiety syndrome, carpal tunnel syndrome, and degenerative disc disease. *Id.* On March 9, 2005, Dr. Vosler reported that Plaintiff was able to sit and stand/walk each for two hours, needed an opportunity to alternate sitting and standing at will throughout the day, was able to lift up to five pounds frequently, had pain that was disabling to the extent that it would prevent her from working full time even at a sedentary position, and had deficiencies of attention and concentration due to pain and/or side effects of medication that would result in a failure to complete tasks in a timely manner. *Id.* In May, 2005, Dr. Vosler reported that Plaintiff was disabled from work activity until at least October 1, 2005, and in September, 2005, Dr. Vosler reported that Plaintiff would be disabled until at least February 1, 2006. *Id.*

The record contains a copy of treating physician Dr. Tyner's office notes dated March through July, 2004, and which reflect that Dr. Tyner treated Plaintiff for various medical conditions including hypertension, sleep apnea, hyperlipidemia, back pain/radiculopathy, and obesity. (Tr. 221-30).

4

Plaintiff participated in physical therapy during the period March 10 through May 17, 2004. (Tr. 282-88). At the completion of that therapy, it was noted that Plaintiff had met the goals for lower extremity strength and her range of motion had improved, but that she complained of more low back and upper leg pain. *Id.*

A March 22, 2004, EMG of Plaintiff's legs showed evidence of a left peroneal motor neuropathy but no evidence of peripheral neuropathy or primary muscle disease. (Tr. 173-74).

A lumbar spine MRI performed on April 1, 2004, revealed a moderate circumferential disk bulge at L4-5 without mass effect but some minimal extension on the far lateral foraminal region on the left without mass effect on the exiting nerve root. (Tr. 194).

Plaintiff was hospitalized August 23-26, 2004, at which time she underwent a gastric bypass, liver biopsy, and gastrostomy which Dr. Maguire performed. (Tr. 210-18). At the time of Plaintiff's admission, Dr. Maguire noted that Plaintiff was morbidly obese, and that she also had diabetes, hypertension, gastroesophageal reflux disease, sleep apnea and arthritis. *Id.* Plaintiff tolerated the procedures and was discharged. *Id.*

Plaintiff treated with neurosurgeon Dr. Goodall during the period November, 2004, through October, 2005. (Tr. 247-53). When Dr. Goodall first saw Plaintiff on November 18, 2004, he reported that she had a decreased ankle jerk on the left, her muscle testing was somewhat difficult to interpret, she exhibited diffuse, non-dermatomal decreased perception of pinprick throughout the left lower extremity with the exception of S-1, and that straight leg raising on the left was positive. *Id.* Dr. Goodall also reported that Plaintiff had a decreased range of spinal motion and moderate paraspinal reactivity. *Id.* Dr. Goodall identified Plaintiff's diagnoses as lumbar radiculopathy and possible herniated lumbar disc. *Id.* On January 25, 2005, Dr. Goodall noted that a lumbar

5

myelogram failed to identify any significant intradural or extradural defect. *Id.* Dr. Goodall reported on October 4, 2005, that Plaintiff's deep tendon reflexes were equal, there was decreased strength to dorsiflexion on the left, decreased sensory testing along L5 and S1 on the left, positive straight leg raising, and decreased ranges of motion. *Id.* Dr. Goodall also reported that Plaintiff continued to have significant pain in spite of multiple forms of conservative care. *Id.*

Plaintiff received treatment at the Pain Management Center during the period April, 2005, through February, 2006. (Tr. 331-38). At the time Plaintiff was initially evaluated by Dr. Rogers, he noted that her reflexes were 2/4 for the bilateral patellar and 1/4 for the bilateral Achilles tendons, straight leg raising was positive on the left at twenty-five degrees and negative on the right, and that she had tenderness over the left L4-5 facet joint. *Id.* Dr. Rogers identified Plaintiff's diagnosis as displaced lumbar disc and he recommended epidural steroid injections. *Id.* Plaintiff subsequently underwent a series of injections and denied any significant relief from them. *Id.* Plaintiff's health care providers at the Pain Management Center subsequently monitored Plaintiff's medications. *Id.*

Plaintiff consulted with neurosurgeon Dr. West on November 11, 2005, at which time Dr. West reported that Plaintiff had mild tenderness in the lower lumbar region with deep palpation, her spinal range of motion was decreased, she was able to stand on her heels and toes, and her reflexes were 2/4 bilaterally. (Tr. 295-96). Dr. West also reported that Plaintiff had no sensory deficits, her straight leg raising was positive at forty-five degrees on the left, that a November 1, 2004, MRI revealed mild degenerative disease, and that January, 2005, myelogram was normal. *Id.* Dr. West identified Plaintiff's diagnosis as mild lumbar degenerative disc disease. *Id.* Dr. West recommended conservative care including physical therapy and epidural blocks. *Id.* Plaintiff

6

underwent the epidural blocks (Tr. 332-35) and additional physical therapy. (Tr. 298).

The record contains a copy of treating physician Dr. Bingham's office notes dated August 30, 2006, through January 4, 2008. (Tr. 589-653). Those records reveal that Dr. Bingham treated Plaintiff for various medical conditions and complaints including hypertension, irritable bowel syndrome, myalgia, nerve root damage, lumbar osteoarthritis, back pain, GERD, dizziness, urinary incontinence, lateral epicondylitis, constipation, and trochanteric area bursitis. *Id.*

On March 28, 2007, Dr. Bingham reported that Plaintiff was able to sit and stand/walk each for less than 1 hour, needed the opportunity to alternate sitting and standing at will throughout the day, was able to occasionally lift/carry up to five pounds occasionally, and she had disabling pain that would prevent her from working full-time in even a sedentary job which was caused by severe degenerative joint disease and osteoarthritis of the lower back. (Tr. 369-71). Dr. Bingham also reported that Plaintiff had deficiencies of attention and concentration due to pain and/or side effects of medication. *Id.*

On November 7, 2007, Dr. Bingham reported that he first saw Plaintiff on August 30, 2006, last saw her April 16, 2007, her diagnoses were chronic back pain/DJD of the lumbosacral spine, incontinence, elbow pain, knee pain/DJD/osteoarthritis, and hip pain, that she had chronic pain, that due to the unpredictable exacerbations of her back pain, Plaintiff was not able to perform some mental work-related activities, that she had slight restrictions of activities of daily living, no difficulties in maintaining social functioning, moderate deficiencies of concentration, and that her impairments would cause her to be absent more than three times a month. (Tr. 654-63).

Plaintiff began pain management treatment with Dr. Saleh on October 30, 2006, and continued to receive treatment from him until July 2, 2007. (Tr. 373-411; 489-94). When he first

7

evaluated Plaintiff, Dr. Saleh reported that Plaintiff had an abnormal posture, walked with a limp favoring her right leg, required the use of a cane, was able to heel/toe walk with discomfort, got on and off the exam table with discomfort, had diffuse tenderness/spasm/trigger points over the lumbar paraspinous muscles, latissimus dorsi muscles, quadratus lumborum, gluteus muscles, and piriformis muscles all on the left, and that she had tenderness over the sacroiliac and facet joint on the left. *Id.* Dr. Saleh also reported that Plaintiff had a decreased range of lumbar spine motion, reported diffuse hyposthesia on the left, and that she had positive straight leg raising. *Id.* Dr. Saleh noted that Plaintiff's passive motion was stiff in her left knee, she had tenderness over the patella, medial and lateral condyle of the femur, tibia, fibula, biceps femoris muscles and lateral tendons on the left, a decreased range of motion of the left knee, and diffuse hyposthesia on the left. *Id.* Dr. Saleh identified Plaintiff's diagnoses as lumbar intervertebral disc displacement, lumbar radiculopathy, lumbar degenerative disc disease, degenerative arthritis of the left knee, and bilateral sacroiliac sprain/strain. *Id.* Dr. Saleh recommended a course of treatment including medications, steroid injections, an exercise program, and a TENS unit. *Id.*

On May 14, 2007, Dr. Saleh reported that Plaintiff needed to change position every ten to fifteen minutes, could sit or stand/walk each for less than an hour in a day, was able to lift up to five pounds occasionally, and that she was not able to use either foot for repetitive movements. *Id.*

An MRI of Plaintiff's lumbar spine performed on December 6, 2006, revealed multilevel thoracic and lumbar spondylosis, a diffuse disc bulge with bilateral hypertrophic disease and mild bilateral neural foraminal narrowing at the L3-4 and L5-S1 levels, and diffuse bulge .protrusion with bilateral hypertrophic disease at L4-5 with mild to moderate bilateral neural

8

foraminal narrowing. (Tr. 397).

Plaintiff began seeing Dr. Brahmbhatt for pain management in July, 2007. (Tr. 507-56). At the time Dr. Brahmbhatt first evaluated Plaintiff he reported that she had generalized tenderness in the lower lumbar and paraspinal region with mild to moderate degree of muscle spasm, no trigger points, no tenderness of the lumbar facet joint or sacroiliac joint, straight leg raise to seventy to eighty degrees, negative sciatic nerve stretch, and normal motor and sensory exams. *Id.* Dr. Brahmbhatt also reported that Plaintiff had generalized soreness and tenderness in both her upper and lower extremities. *Id.* Dr. Brahmbhatt identified Plaintiff's diagnoses as chronic cervicalgia secondary to degenerative spondylosis and degenerative disc disease, chronic lower back pain secondary to degenerative spondylosis and degenerative disc disease, history of anxiety and depression, morbid obesity, history of chronic fatigue syndrome, poor motor skills and coordination and a history of upper extremity tremors. *Id.* Plaintiff continued to receive treatment from Dr. Brahmbhatt through at least September, 2007. *Id.*

On September 20, 2007, Plaintiff sought emergency room treatment for complaints of severe back pain. (Tr. 495-506). At that time, it was noted that Plaintiff's spine was non-tender in the midline, her paraspinal muscles were somewhat spastic on the left more than the right, there was diffuse tenderness along the paraspinous muscles on the left, and that there was some palpable spasm. *Id.* Plaintiff was treated with medications and discharged. *Id.*

Examining physician Dr. Koppenhoefer reported on September 26, 2007, that Plaintiff used a quad cane, had evidence of a lumbar scoliosis, that palpation revealed no evidence of specific discomfort, motion involving the lumbosacral spine was limited on an active basis because of discomfort, and that Plaintiff's neurological examination was normal. (Tr. 412-25). Dr.

Koppenhoefer also reported that Plaintiff displayed no atrophy, no abnormal reflexes, and that muscle testing revealed normal strength. *Id.* Dr. Koppenhoefer identified Plaintiff's diagnoses as degenerative/aging changes involving the lumbosacral spine. *Id.* Dr. Koppenhoefer opined that Plaintiff's restrictions were limited to her subjective complaints, her only restrictions would be related to her obesity in terms of lifting and repetitive bending/stooping, activities, that she was able to lift and carry up 20 pounds frequently and up to 35 pounds occasionally, sit for three hours at a time, and stand and walk each for one hour at a time, sit for eight hours total in a work day, stand for six hours total in a work day, and walk for three hours total in a work day, and that she required the use of a cane to ambulate but that it was not medically necessary. *Id.*

An EMG performed on December 13, 2007, was suggestive of chronic left L5-S1 radiculopathy. (Tr. 594). An MRI of Plaintiff's lumbar spine performed on January 4, 2008, revealed a mild disc bulge and mild facet hypertrophy at L3-4, a minimal broad based disc bulge at L4-5 that flattened the anterior of the thecal sac and moderate facet hypertrophy. *Id.*

Plaintiff was evaluated by psychiatrist Dr. Pina on April 18, 2007, who reported that Plaintiff's gait was slow and unsteady and that she was obese. (Tr. 579-86). Dr. Pina also reported that Plaintiff was oriented, easily distracted, had normal psychomotor activity, normal speech, a sad, anxious, and irritable mood, a constricted and blunted affect, and that her thought processes were normal. *Id.* Dr. Pina identified Plaintiff's diagnoses as mood disorder and anxiety disorder NOS and he prescribed medication. *Id.*

Plaintiff saw psychiatrist Dr. Birdi in follow-up in June, 2007. He reported that Plaintiff's mood was appropriate, sad, and anxious, her thought process was normal, her speech was normal, she was focused and her concentration was intact, and that her affect was full. *Id.* Dr. Birdi

adjusted Plaintiff's medications and identified her diagnosis as major depression. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff did not meet or equal the Listings, was able to perform light work, should avoid ladders, ropes, scaffold, hazardous machinery, kneeling, stooping, crouching, and crawling, and that she should have a sit-stand at-will option. (Tr. 752-65). The MA also testified that Plaintiff's symptoms were exaggerated, that arthritis and obesity could cause back pain, that although an EMG indicated some interruption of transmission, it was not correlated with the MRIs of record, and that indications of sensory loss and reflex loss at various exams would not satisfy the parameters of Listing 1.04 in view of negative MRIs. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by finding she is capable of performing a limited range of light work because her treating physicians have determined that she is not capable of performing even sedentary work. (Doc. 9). Plaintiff also alleges that the Commissioner erred by failing to properly evaluate her credibility because he failed to consider her impairments in combination. *Id.*

In support of her first Error, Plaintiff argues that the Commissioner erred by failing to give controlling, or even great, weight to Drs. Vosler's, Saleh's, and Bingham's opinions. Plaintiff particularly argues that the Commissioner did not give good reasons for distinguishing those physicians' opinions.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating

11

physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[1] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

---

[1] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakely,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." Blakely, supra, quoting, Rogers v. Commissioner of Social Security., 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In considering Drs. Vosler's, Bingham's, and Saleh's opinions Judge Armstead first recognized that they were, indeed, treating physicians. (Tr. 22). Judge Armstead also identified

13

those physicians' specific medical specialties. (Tr. 27). Nevertheless, Judge Armstead determined that the physicians' opinions were not entitled to controlling weight because they were not supported by the medical evidence and were inconsistent with the other evidence of record.

First, Judge Armstead reviewed the results of the relevant x-rays and MRIs contained in the record and noted that they revealed, at worst, some degenerative changes and mild disc space narrowing. (Tr. 21). As the Court's review of the record indicates, *supra*, Judge Armstead accurately described the results of the objective tests contained in the record. *See also,* Tr. 194; 240; 255; 397; 498.

In addition, Judge Armstead determined that Drs. Vosler's, Saleh's, and Bingham's opinions were not supported by their office notes . (Tr. 27). For example, Dr. Vosler's clinical notes contain few objective clinical findings and those which she did document were, at worst, mild to moderate. Indeed, Dr. Vosler's office notes are primarily a recitation of Plaintiff's subjective complaints. *See, e.g.,* Tr. 298 (mild findings; doing well); Tr. 301 (some muscle spasm); Tr. 311 (in no distress; generally in good health); Tr. 316 (same); Tr. 323 (same). Moreover, Dr. Vosler indicated that Plaintiff would be able to return to work. *See,* Tr. 361; 363; 366). Dr. Bingham's office notes are primarily documentations of telephone calls Plaintiff made to Dr. Bingham's office seeking advice and medications. (Tr. 589-653). In addition, Dr. Bingham's office notes contain few, if any, objective clinical findings related to Plaintiff alleged disabling impairments. *Id.* In fact, on May 8, 2007, Dr. Bingham reported that Plaintiff would be able to "return to school on 5/9/2007 without restriction." *Id.* Finally, similar to Dr. Vosler and Dr. Bingham, in addition to primarily reciting Plaintiff's subjective allegations and complaints, Dr. Saleh's office notes indicate that he found that Plaintiff had, at worst, diffuse tenderness, a decreased range of motion, and positive

14

straight leg raising, but that her reflexes were 2+, her muscle power 3/5. *See,* Tr. 373-411.

As Judge Armstead determined, Drs. Vosler's, Bingham's, and Saleh's opinions are also inconsistent with the other medical evidence of record. For example, Dr. West reported few objective findings and noted the mild findings on the objective test results. In addition, Dr. Brahmbhatt reported, at worst, mild to moderate clinical findings. Further, Dr. Goodall noted that objective tests failed to reveal any significant defects. Drs. Vosler's, Bingham's, and Saleh's opinions are also inconsistent with Dr. Koppenhoefer's findings and opinion as well as with the MA's opinion and the reviewing physicians' opinions. *See,* Tr. 231-37.

Under these facts, the Commissioner did not err by failing to give Drs. Vosler's, Bingham's, and Saleh's controlling or even great weight.

Plaintiff argues next that the Commissioner erred by failing to properly evaluate her credibility because he failed to consider her impairments in combination. Plaintiff's position is that the Commissioner's credibility findings are improper because he did not find that her anxiety and depression account for why she alleges disabling pain.

An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

First, the Court notes that Plaintiff has failed to challenge the Commissioner's conclusion that she does not have a severe mental impairment. (Doc. 9). Therefore, she has waived

any argument with respect to an alleged mental impairment. *See, Brainard v. Secretary of Health and Human Services,* 889 F.2d 679 (6th Cir. 1989); *Heston v. Commissioner,* 245 F.3d 528 (6th Cir. 2001). Nevertheless, for the same reasons that the Commissioner had adequate bases for not giving Drs. Vosler's, Saleh's, and Bingham's opinions controlling, or even great weight, the Commissioner properly rejected Plaintiff's allegations of disabling pain. Specifically, the objective clinical findings reported by the medical experts of record, as well as the objective test results of record, do not support Plaintiff allegations. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991).

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 1, 2010.

                                                    *s/ Michael R. Merz*
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).